**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| JH STARK COMPANIES, a<br>California Corporation,<br>JEFFREY STARK and RACHEL<br>DONALDSON<br>     Plaintiffs,<br><br>vs.<br><br>CHRISTOPHER MARTORELLA and<br>LAURA MARTORELLA<br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No:<br>)<br>)<br>)<br>) |

## COMPLAINT

COME NOW Plaintiffs Jeffrey Stark and Rachel Donaldson ("Plaintiffs"), by and through their attorneys, and state their Complaint and show this Court as follows:

## PARTIES

1.    Plaintiff JH Stark Companies is a California corporation with its principal place of business in Venice, California.

2.    Plaintiff Jeffrey Stark ("Stark") is an individual residing in Venice, California.

3.    Plaintiff Rachel Donaldson ("Donaldson") is an individual residing in Venice, California.

4.     Defendant Christopher Martorella ("C. Martorella") is an individual residing in Fulton County, Georgia.  C. Martorella may be served at 3200 West Andrews Drive, Atlanta, GA 30305.

5.     Defendant Laura Martorella ("L. Martorella") is an individual residing in Fulton County, Georgia.  L. Martorella may be served at 3200 West Andrews Drive, Atlanta, GA 30305.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 (a)(1) because the parties are diverse, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7.     Venue in this District is proper pursuant to 28 U.S.C. §1391 (b)(1) because the Defendants both reside in Fulton County, Georgia.

## FACTAL BACKGROUND

8.     In early 2014, Defendant C. Martorella became employed by Integral Group in Atlanta, Georgia.  At that time, Plaintiff Stark was serving as a consultant to Integral Group on a project in Atlanta.

9.     In approximately April of 2014, Defendant C. Martorella approached Plaintiff Stark about entering into a transaction where Plaintiffs would loan money to Defendants so that they could reacquire a family home located at 15 Wigwam

Road in Nantucket, Massachusetts (the "Property"). Defendants had previously owned the Property but lost it as a result of a foreclosure.

10. The parties agreed that Plaintiffs would loan money to Defendants for a down payment on the Property and they would also co-sign on a mortgage on the Property, and in exchange, Plaintiffs would have an ownership interest in the Property.

11. In addition, Defendants agreed to cover the mortgage payments and all expenses associated with the Property, and they further agreed to fully repay the money Plaintiffs loaned to them within one year.

12. On or about June 18, 2014, Defendants executed a Promissory Note in the amount of $450,000, plus all amounts thereafter owing, in favor of Plaintiff JH Stark Companies (the "2014 Note"). A true and correct copy of the 2014 Note is attached hereto as Exhibit A.

13. The 2014 Note provided for interest at the rate of ten percent (10%) per annum, with a default rate of fifteen percent (15%) per annum, and it matured by its terms on October 18, 2014.

14. On or about June 19, 2014, Plaintiffs Stark and Donaldson and Defendants L. Martorella and C. Martorella entered into an Indemnification and

Reimbursement Agreement (the "Indemnification Agreement"). A true and correct copy of the Indemnification Agreement is attached hereto as Exhibit B.

15. In exchange for Plaintiffs' agreement to be co-obligors with Defendant L. Martorella on a loan from Wells Fargo Bank in the approximate amount of $1,012,000.00 (the "Wells Fargo Loan"), Defendants agreed that Plaintiffs would have no liability on that loan and that Defendants would fully indemnify, defend and hold Plaintiffs harmless from all liability arising from the Wells Fargo Loan. See Exhibit B.

16. Defendants also agreed to make all loan payments to Wells Fargo Bank, to perform all obligations under the Wells Fargo loan documents, and to refinance the Wells Fargo Loan before July 1, 2015 in order to release Plaintiffs from liability thereunder. Defendants agreed to pay Plaintiffs $1,000 for each month after July 2015 that the Wells Fargo Loan remained outstanding. See Exhibit B.

17. On or about June 12, 2014, David F. Morris and Erika C. Morris executed a Massachusetts Quitclaim Deed conveying the Property to L. Martorella, Stark and Donaldson. A true and correct copy of the Quitclaim Deed is attached hereto as Exhibit C.

18. On or about July 3, 2014, Plaintiffs Stark and Donaldson and Defendant L. Martorella executed a Note and Mortgage in favor of Wells Fargo Bank in the amount of $1,015,700.00. A true and correct copy of the Wells Fargo Note and Mortgage are attached hereto collectively as Exhibit D.

19. The purchase price of the Property was $1,451,000.00. A true and correct copy of the HUD-1 Settlement Statement is attached hereto as Exhibit E.

20. The Quitclaim Deed from David and Erika Morris to Plaintiffs Stark and Donaldson and Defendant L. Martorella was recorded in the Massachusetts Land records on July 7, 2014.

21. Defendants defaulted under the terms of the 2014 Note and Indemnification Agreement by failing to refinance the Wells Fargo Loan as agreed, failing to repay the Note upon its maturity and failing to pay the expenses associated with the Property, to include payments on the Wells Fargo Loan.

22. In 2014 and 2015, Plaintiffs advanced $21,400.00 for payments on the Wells Fargo Loan and $5,159.84 for taxes owing to the City of Nantucket, Massachusetts.

23. On or about July 1, 2016, Defendants executed an Amended and Restated Promissory Note in the principal amount of $674,023 in favor of JH Stark

Companies (the "Amended Note"). A true and correct copy of the Amended Note is attached hereto as Exhibit F.

24. The Amended Note provided for interest at the rate of 15% per annum, compounding quarterly, and a default rate of interest of 20%, compounding quarterly.

25. The Amended Note matured by its terms on July 1, 2017.

26. On or about July 1, 2016, Plaintiffs and Defendants entered into a First Amendment to Indemnification and Reimbursement Agreement and Note Modification Agreement (the "Amended Indemnification Agreement"). A true and correct copy of the Amended Indemnification Agreement is attached hereto as Exhibit G.

27. Pursuant to the terms of the Amended Indemnification Agreement, Defendants reaffirmed their obligations under the 2014 Note and the Indemnification Agreement, and they acknowledged the accuracy of the new principal balance set forth in the Amended Note.

28. Defendants promised to use their best efforts to refinance the Wells Fargo Loan and they agreed to pay $1,000 on the first business day of each month for every month the Wells Fargo Loan remained outstanding.

## COUNT I: INDEBTEDNESS OWING UNDER PROMISSORY NOTE AND INDEMNIFICTION AND REIMBURSEMENT AGREEMENT

29.     Plaintiffs incorporate the allegations in the preceding paragraphs of this Complaint as though fully restated herein.

30.     Defendants are in default of their payment and other obligations under the foregoing Notes and Indemnification Agreements as follows:     failure to refinance the Wells Fargo Loan; failure to pay the Amended Note upon maturity; failure to pay the Wells Fargo Loan payments and expenses associated with the Property; and failure to pay Plaintiffs $1,000 on the first business day of each month that the Wells Fargo Loan remains outstanding.

31.     As of September 1, 2020, Defendants are indebted to Plaintiff JH Stark Companies under the 2014 Note and the Amended Note in the principal amount of $1,827,706.00.  Pursuant to the terms of the loan documents, interest continues to accrue on this balance at the rate of twenty percent (20%) per annum, compounding quarterly.

32.     As of the date of filing this Complaint, Defendants are indebted to Plaintiffs JH Stark Companies, Jeffrey Stark and Rachel Donaldson under the Amended Indemnification Agreement in the amount of $50,000, which represents $1,000 per month from August 1, 2016 through September 1, 2020, plus all future payments which accrue through the date of judgment.

## COUNT II – ATTORNEY'S FEES

33.    As a result of Defendants' breach of their obligations under the 2014 Note and Amended Note, and the Indemnification Agreement and Amended Indemnification Agreement, Plaintiffs have incurred and will continue to incur legal fees and expenses.  Plaintiffs hereby notify Defendants of their intent to enforce the provisions of the foregoing documents relative to the payment of attorney's fees. <u>See</u> Notice attached hereto as <u>Exhibit H</u>.

34.    In the alternative, Defendants have acted in bad faith in the facts and circumstances which underlie this cause of action, have caused Plaintiffs significant and unnecessary trouble and expense, and have been stubbornly litigious, thereby entitling Plaintiffs to an award of attorney's fees.

WHEREFORE, Plaintiffs pray that they have judgment as follows:

(a)    In favor of JH Stark Companies and against Defendants Christopher Martorella and Laura Martorella, jointly and severally, in the amount of $1,827,706.00 as of September 1, 2020, representing the indebtedness owing under the 2014 Note and Amended Note, plus all interest that accrues through the date of judgment; and also

(b)    In favor of JH Stark Companies, Jeffrey Stark and Rachel Donaldson and against Defendants Christopher Martorella and Laura Martorella,

jointly and severally, in the amount of $50,000.00 as of September 1, 2020 representing the indebtedness owing under the Indemnification Agreements, plus all additional payments which accrue through the date of judgment; and also

(c)     For award of attorney's fees against Defendants pursuant to the terms of the foregoing documents and applicable state law; and also

(d)     For such other and further relief as this Court deems just and equitable.

This the 21st day of September, 2020.

                                         /s/ Margaret S. Puccini
                                        Margaret S. Puccini
                                        State Bar No. 645880
                                        Attorneys for Plaintiffs

BOUHAN FALLIGANT LLP
Post Office Box 2139
Savannah, Georgia   31402-2139
(912) 232-7000
mpuccini@bouhan.com
4812-3002-1060, v. 1

# EXHIBIT A

# Promissory Note

$450,000.00                                                                                          June 18, 2014

**FOR VALUE RECEIVED**, the undersigned, Laura Martorella ("L. Martorella") and Christopher Martorella ("C. Martorella" and collectively with L. Martorella, the "Indemnitors" "Maker"), whose address is 35 Nuschoee Avenue, Atlanta, GA, 30305 , hereby promises to pay to the order of JH Stark Companies, a California Corporation ("Payee"), whose address is 2042 Walnut Ave Venice, California, 90291, or at such other place as Payee may from time to time designate in writing, the principal sum of Four Hundred Fifty Thousand Dollars and No/100 ($450,000.00) (the "Loan Amount"), pursuant to this Promissory Note (this "Note"), together with interest thereon at the applicable per annum rate as hereinafter set forth, and all other amounts now or hereafter owing by Maker to Payee under this Note.   The indebtedness evidenced by this Note is referred to as the "Debt".

1.        <u>Funding; Use of Proceeds</u>.  The Loan Amount has been fully funded on the date hereof.  Notwithstanding anything to the contrary contained in this Note, the proceeds of the Note shall only be used by Maker to acquire 15 Wigwam Road, Nantucket, Massachusetts (the "Property").

2.        <u>Principal and Interest</u>.  From and after the date hereof, through and including October 18, 2014 (the "Maturity Date"), interest shall accrue on the unpaid principal amount outstanding from time to time under this Note at the rate equal to ten percent (10%) per annum.

3.        <u>Payment of Interest and Principal</u>.  Maker shall repay the principal amount outstanding under this Note together with all accrued interest thereon on the Maturity Date, or on any earlier date on which the unpaid principal balance of this Note becomes due and payable, by acceleration or otherwise.  All payments by Maker hereunder shall be applied (i) first to any amount due to Payee pursuant to Paragraph 8 of this Note, (ii) then to the interest due and unpaid under this Note and (iii) thereafter to any principal owing under this Note.

4.        <u>Prepayment</u>.  Maker shall have the right to prepay in part or in full, without penalty, any amounts due and payable under this Note (together with accrued interest to the date of prepayment on the amount of principal thus prepaid) at any time or times.

5.        <u>Default Interest Rate</u>.  Upon a default and until such time as such default is cured, Payee may raise the rate of interest accruing on the unpaid principal balance hereof to fifteen percent (15%) per annum   (the "<u>Default Rate</u>"), independent of whether Payee elects to accelerate the unpaid principal balance as a result of such default.

6.        <u>Waiver Regarding Notice</u>.  Except as set forth herein, Maker waives presentment, demand and presentation for payment, notice of nonpayment and dishonor, protest and notice of protest, or any other notices of whatever kind or nature, bringing of suit and diligence in taking any action to collect any sum owing hereunder.  From time to time, without in any way affecting the obligation of Maker to pay the outstanding principal balance of this Note and any interest accrued thereon and fully to observe and perform the covenants and obligations of Maker under this Note, without giving notice to or obtaining the consent of Maker and without liability on the

part of Payee, the Payee may, at its option, (i) extend the time for payment of interest hereon and/or principal hereof, (ii) reduce the payments hereunder, (iii) release anyone liable on this Note, (iv) accept a renewal of this Note, (v) join in any extension or subordination, and/or (vi) exercise any right or election hereunder. No one or more of such actions shall constitute a novation or operate to release any party liable for this Note, either as Maker or otherwise.

7. <u>Events of Default</u>. The occurrence of any of the following, whatever the reason therefor, shall constitute an "Event of Default" hereunder:

(a) Maker fails to make any payment of principal or interest hereunder within ten (10) days of when due; or

(b) Any Maker is the subject of a final order for relief by a bankruptcy court, or is unable or admits its inability to pay its debts as they mature, or makes an assignment for the benefit of creditors; or any Maker applies for or consents to the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator or similar officer for it or any part of its property; or any receiver, trustee, custodian, conservator, liquidator, rehabilitator or similar officer is appointed without the application or consent of any Maker, and the appointment continues undischarged or unstayed for 60 days; or any Maker institutes or consents to any bankruptcy, insolvency, reorganization, arrangement, readjustment or debt, dissolution, receivership, custodianship, conservatorship, liquidation, rehabilitation or similar proceeding relating to it or any part of its property; or any similar proceeding is instituted without the consent of said Maker and continues undismissed or unstayed for 60 days; or any judgment, writ, warrant or attachment or execution, or similar process is issued or levied against any property of any Maker and is not released, vacated or fully bonded within 60 days after its issue or levy.

8. <u>Remedies</u>. Upon the occurrence of an Event of Default, Payee shall have the right to cause the entire unpaid principal balance hereof, together with all accrued interest thereon, reasonable attorneys' fees and all fees, charges, costs and expenses, if any, owed by Maker to Payee hereunder, to become immediately due and payable in full by giving written notice to Maker. Upon the occurrence of an Event of Default, Payee may avail itself of any and all legal and equitable rights and remedies which Payee may have at law or in equity or under this Note, including, but not limited to, the right to accelerate the indebtedness due under this Note as described in the preceding sentence. The remedies of Payee hereof as provided herein shall be distinct and cumulative, and may be pursued singly, successively or together, at the sole discretion of Payee, and may be exercised as often as occasion therefor shall arise. Failure to exercise any of the foregoing options upon the occurrence of an Event of Default shall not constitute a waiver of the right to exercise the same or any other option at any subsequent time in respect of the same or any other Event of Default, and no single or partial exercise of any right or remedy shall preclude other or further exercise of the same or any other right or remedy. Payee shall have no duty to exercise any or all of the rights and remedies herein provided or contemplated. The acceptance by Payee of any payment hereunder that is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of the right to exercise any of the foregoing rights or remedies at that time, or nullify any prior exercise of any such rights or remedies without the express written consent of Payee.

2

50096373.1

9. <u>Expenses of Collection</u>. Should this Note be referred to an attorney for collection after an Event of Default, whether or not suit has been filed or any other action instituted or taken to enforce or collect under this Note, Maker shall pay all of Payee's costs, fees (including reasonable attorneys' fees) and expenses in connection with such referral and enforcement.

10. <u>Governing Law</u>. The provisions of this Note shall be governed and construed according to the internal laws of the State of California (without regard to its laws relating to choice or conflicts-of-law). The forum for any legal action or proceeding under this Note shall be the Superior Court of the County of Los Angeles or the Central District of the California United States District Court.

11. <u>Waiver</u>. Neither any course of dealing by Payee nor any failure or delay on its part to exercise any right, power or privilege hereunder shall operate as a waiver hereof unless said waiver is in writing and signed by Payee, and then only to the extent specifically set forth in said writing. A waiver as to one event shall not be construed as a continuing waiver or as a bar to, or waiver of, any right or remedy as to any subsequent event.

12. <u>Modification</u>. This Note may not be changed orally, but only by an agreement in writing, signed by the party against whom any change, modification or discharge is sought.

13. <u>Notices</u>. All notices required or permitted hereunder shall be in writing and shall be served on the parties at the addresses set forth on the first page of this Note. Any such notices shall be either (a) sent by certified mail, return receipt requested, in which case notice shall be deemed delivered three business days after deposit, postage prepaid in the U.S. Mail, (b) sent by overnight delivery using a nationally recognized overnight courier, in which case it shall be deemed delivered one business day after deposit with such courier, (c) sent by telefax, in which case notice shall be deemed delivered upon transmission of such notice, or (d) sent by personal delivery. The above addresses may be changed by written notice to the other party; provided, however, that no notice of a change of address shall be effective until actual receipt of such notice. Copies of notices are for informational purposes only, and a failure to give or receive copies of any notice shall not be deemed a failure to give notice.

14. <u>Assignment</u>. Payee may assign or otherwise transfer this Note and any other document pertaining to the Debt at any time or from time to time.

15. <u>Severability</u>. In the event any one or more of the provisions contained in this Note shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall, at the option of Payee hereof, not affect any other provision of this Note and this Note shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

16. <u>Limitations of Applicable Law</u>. In the event the operation of any provision hereof results in an effective rate of interest transcending the limit of the usury or any other law applicable to the Debt evidenced hereby, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice between or by any party to this Note, be applied to the unpaid principal balance of this Note immediately upon receipt of such monies by Payee, with the same force and effect as though Maker had

3

specifically designated such extra sums to be so applied to the unpaid principal balance and Payee hereof had agreed to accept such extra payment(s) as a prepayment.

17. <u>Joint and Several Liability</u>. The liability of each Maker hereunder shall be joint and several.

18. <u>Time of Essence</u>. It is expressly agreed that time is of the essence in the performance of the obligations set forth in this Note.

19. <u>Gender and Number</u>. Feminine or neuter pronouns shall be substituted for those of the masculine form, and the plural shall be substituted for the singular number, in any place or places in which the context may require such substitution.

*Remainder of page intentionally left blank*

4

**IN WITNESS WHEREOF**, Maker has executed this Note as of the date set forth above pursuant to due authority.

**MAKER:**

Christopher Martorella

5

50096373.1

EXHIBIT B

# INDEMNIFICATION AND REIMBURSEMENT AGREEMENT

This Indemnification and Reimbursement Agreement (the "Agreement"), is made and entered into as of this June 19, 2014, by and between Jeffrey H. Stark ("Stark"), Rachel Donaldson ("Donaldson" and collectively with Stark, the "Guarantors"), each with an address at 2042 Walnut Ave Venice, California, 90291, and Laura Martorella ("L. Martorella") and Christopher Martorella ("C. Martorella" and collectively with L. Martorella, the "Indemnitors"), each with an address at 35 Nuschoee Avenue, Atlanta, GA, 30305, with reference to the following recitals of fact. The Guarantors and the Indemnitors are herein referred to as the "Parties".

## R E C I T A L S:

WHEREAS, L. Martorella is acquiring that certain single family home located at 15 Wigwam Road, Nantucket, Massachusetts as more specifically described in Exhibit "A" attached hereto (the "Property");

WHEREAS, in order to facilitate L. Martorella's acquisition and financing of the Property, the Guarantors have agreed to be co-obligors on that certain loan in the approximate amount of $1,012,000 (the "Loan") from Wells Fargo, N.A.(the "Lender"); and

WHEREAS, it is the intent of the Parties that the Guarantors shall have no liability on the Loan and that the Indemnitors shall fully indemnify, defend and hold the Guarantors harmless for any liability arising from the Loan.

NOW, THEREFORE, in consideration of the foregoing recitals, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties hereto agree as follows:

## A G R E E M E N T:

1.     <u>Loan Obligations</u>. The Indemnitors shall pay any and all amounts due under the Loan, and perform all obligations set forth in the Loan, in a timely manner and in all events prior to delinquency. The Indemnitors agree and acknowledge that the Guarantors shall have no obligation to make any payment, or perform any obligation under the Loan. Notwithstanding the foregoing, the Guarantors shall have the right, but not the obligation, to make any payment, or perform any obligation, under the Loan if any Guarantor believes any Indemnitor has not, or shall not, make said payment or perform such obligation. In the event any Guarantor makes any expenditure in connection with the payment or performance of any obligation under the Loan, the amount of said expenditure shall be a Reimbursable Obligation and shall be paid in accordance with Section 5 hereof.

2.     <u>Refinancing of Loan</u>. The Indemnitors shall cause the Loan to be refinanced on or before July 1, 2015 which refinancing shall release the Guarantors from all liability thereunder. If the Loan is not refinanced on or before July 1, 2015, Indemnitors shall pay $1000 per month (on the first business day of each month) for every month the Loan remains outstanding.

3. _Insurance of Property_. The Indemnitors shall at all times maintain full casualty and liability insurance for the Property in an amount reasonably acceptable to the Guarantors and in all instances in the minimum amount required pursuant to the Loan (the "Property Insurance"). The Indemnitors shall cause the Guarantors to be named as additional insured parties under the Property Insurance. If the Indemnitors fail to maintain the Property Insurance, the Guarantors shall have the right to obtain said insurance and any amount expended in connection therewith shall be a Reimbursable Obligation and shall be paid in accordance with Section 5 hereof.

4. _Maintenance of Property_. The Indemnitors shall at all times maintain the Property in good condition and repair and shall ensure that the Property is protected from the elements and that all mechanical, electrical and plumbing systems are at all times in good working order. If the Indemnitors fail to maintain the Property in accordance with this Section 3, the Guarantors shall have the right to undertake such maintenance and repair work and Guarantors deem necessary or prudent and any amount expended in connection therewith shall be a Reimbursable Obligation and shall be paid in accordance with Section 5 hereof.

5. _Payment of Reimbursable Obligations_. To the extent any Guarantor incurs any Reimbursable Obligation, the Indemnitors shall reimburse said Guarantor(s) for the Reimbursable Obligation and interest thereon at the lesser of (a) ten percent per annum (compounding quarterly) or (b) the maximum interest rate allowed by law, upon five (5) days written demand therefor.

6. _Indemnity of Guarantors_. The Indemnitors shall indemnify, defend and hold the Guarantors harmless from and against any and all liabilities and obligations of the Guarantors under the Loan or in connection with the Property, including, without limitation, any and all Reimbursable Obligations.

7. _Right to Acquire Property_. If at any time the Loan is declared in default by the Lender, and said default is not cured within thirty (30) days thereof, upon the written request of the Guarantors, L. Martorella shall transfer title to the Property to the Guarantors or their designee.

8. _Right to Use Property_. For so long as the Property is owned in whole or in part by any Indemnitor or any relative thereof, the Guarantors and their invitees shall have the right to exclusively use the Property at no cost or expense to the Guarantors (a) for two weeks every August at a time to be designated by the Guarantors on or before April 1st of each year and (b) during such other times as may be requested by Guarantors so long as the Property is not otherwise occupied by Indemnitors.

9. _Right of First Refusal to Acquire the Property_. For so long as the Property is owned in whole or in part by any Indemnitor or any relative thereof, prior to the sale of the Property to any person who is not a relative of Indemnitor, Indemnitor shall offer the Property for sale to the Guarantors upon the same terms and conditions as the Property is being offered to said third party. The Guarantor shall have fifteen (15) days to accept or reject the offer and shall be deemed to have rejected said offer if not accepted within fifteen (15) days.

2

50096063.1

10. <u>Governing Law</u>. This Agreement shall be interpreted in accordance with and governed in all respects by the laws of the State of California. If any party to this Agreement shall bring any action or proceeding in connection with this Agreement, the prevailing party in such action shall be entitled to recover as a part of such action or proceeding its attorneys' fees, accountants' and experts' fees and court costs. The forum for any legal action or proceeding under this Note shall be the Superior Court of the County of Los Angeles or the Central District of the California United States District Court.

11. <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns.

12. <u>Waiver</u>. Any Party may waive compliance by another Party with any of the covenants or conditions in this Agreement but no waiver shall be binding on any Party unless executed in writing by that Party. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver unless expressly stated otherwise.

13. <u>Severability</u>. If any provision or part of any provision of this Agreement is for any reason held to be invalid, unenforceable, or contrary to any public policy, law, statute, and/or ordinance, the remainder of this Agreement shall not be affected thereby and shall remain valid and fully enforceable.

14. <u>Joint and Several Obligations</u>. The obligations of the Indemnitors hereunder shall be joint and several.

15. <u>Modifications or Amendments</u>. No amendment, change or modification of this Agreement shall be valid, unless in writing and executed by all the Parties .

16. <u>Further Documents or Actions</u>. To the extent that the effectuation of any part of the Agreement requires any Party or its counsel to execute any further documentation or take any further actions, each Party agrees to execute and deliver such other and further documents and to timely take such actions as may be required to carry out the terms of the Agreement.

17. <u>Attorneys' Fees</u>. In the event of any controversy or litigation among the Parties relating to any provision of this Agreement, then the prevailing party in any such litigation shall, in addition to any other award made by the court in such litigation, be entitled to recover all of its costs incurred in connection therewith, including attorneys' fees and those fees incurred upon any appeal.

18. <u>Notices</u>. All notices required or permitted hereunder shall be in writing and shall be served on the parties at the addresses set forth on the first page of this Note. Any such notices shall be either (a) sent by certified mail, return receipt requested, in which case notice shall be deemed delivered three business days after deposit, postage prepaid in the U.S. Mail, (b) sent by overnight delivery using a nationally recognized overnight courier, in which case it shall be deemed delivered one business day after deposit with such courier, (c) sent by telefax, in which case notice shall be deemed delivered upon transmission of such notice, or (d) sent by personal delivery. The above addresses may be changed by written notice to the other party; provided,

3

however, that no notice of a change of address shall be effective until actual receipt of such notice. Copies of notices are for informational purposes only, and a failure to give or receive copies of any notice shall not be deemed a failure to give notice.

19.    <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same document.

IN WITNESS WHEREOF, this Agreement is hereby executed as of the day and year first above written.

INDEMNITORS:                      GUARANTOR:

_____
Jeffrey H. Stark

_____        _____
Christopher Martorella                    Rachel Donaldson

4

50096063.1

Exhibit A

Legal Description of Property

5

50096063.1

EXHIBIT C




2014 00144980
Cert: 25253    Doc: DD
Registered: 07/07/2014 11:58 AM

## MASSACHUSETTS QUITCLAIM DEED

We, DAVID F. MORRIS and ERIKA C. S. MORRIS, of 20 Circle Road, Darien CT  06820

for consideration paid and in full consideration of ONE MILLION FOUR HUNDRED FIFTY-ONE THOUSAND AND NO/100 DOLLARS ($1,451,000.00),

grant to LAURA MARTORELLA, individually, of 35 Muscogee Avenue, Atlanta GA 30305, for an undivided one-half interest, and JEFFREY H. STARK and RACHEL DONALDSON, husband and wife as joint tenants with right of survivorship, of 2042 Walnut Avenue, Venice CA 90291, for an undivided one-half interest, said parties to hold their respective interests as tenants in common,

with QUITCLAIM COVENANTS,

that certain parcel of land together with the improvements thereon situate at 15 WIGWAM ROAD, Nantucket Town and County, Massachusetts, bounded and described as follows:

NORTHERLY            by Wigwam Road, on two courses, 303.31 feet;

SOUTHEASTERLY  by Lot 821 on plan hereinafter mentioned, 252.50 feet;

SOUTHERLY            by Lot 822 on said plan, 105.00 feet; and

WESTERLY              by Lot 819 on said plan, 252.50 feet.

All of said boundaries are determined by the Court to be located as shown upon plan numbered 5004-50, Sheet 2, drawn by Schofield Brothers, Inc., Surveyors, dated December 15, 1972, and filed with Certificate of Title No. 9613 at the Registry District of Nantucket County.  Said land is shown thereon as Lot 820.

There is appurtenant to said land the right to use the whole of the fifty (50) foot way shown on Plan No. 5004-J.

This conveyance is made subject to and with the benefit of rights, easements and restrictions of record as set out on Certificate of Title No. 24288 at said Registry District.

For Grantor's title see Certificate of Title No. 24288 at said Registry District.

We, DAVID F. MORRIS and ERIKA C. S. MORRIS, hereby certify that we are married to each other and no former spouse or former civil union partner resides in the property as their primary residence and that no such person is entitled to claim the benefit of an existing estate of homestead.

WITNESS my hand and seal as of this 12ᵗʰ day of June, 2014

David F. Morris                         Erika C. S. Morris

State of Connecticut

County of Fairfield

On this _12_ day of June, 2014, before me, the undersigned notary public, personally appeared David F. Morris and Erika C. S. Morris (a) _✓_ personally known to me, or (b) ____ proved to me through satisfactory evidence of identification, which was _____, (type of identification) to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

Official Signature and Seal of Notary Public
My Commission expires: December 31, 2015

MASSACHUSETTS EXCISE TAX
Nantucket County ROD #16 001
Date: 07/07/2014 11:58 AM
Ctrl# 461217 28254 Doc# 00144980
Fee: $6,618.56 Cons: $1,451,000.00



NANTUCKET LAND BANK
CERTIFICATE
☑ Paid $ 29020.⁰⁰
☐ Exempt
☐ Non-applicable
35317       7/7/14
No.              Date
Authorization

C-002

144980

DOC No: 00144980

NANTUCKET COUNTY LAND COURT
REGISTRY DISTRICT

** RECEIVED FOR REGISTRATION **
On: Jul 07,2014 at 11:58A

Document Fee: 125.00 Rec.Total:$71066.

56

CERTIFICATE No: 25253

Also noted on CERT 24298

C-003

# EXHIBIT D

# Note

JULY 03, 2014
    *[Date]*                                    *[City]*                                    *[State]*

15 WIGWAM ROAD, NANTUCKET, MA 02554

*[Property Address]*

## 1. Borrower's Promise to Pay

In return for a loan that I have received, I promise to pay U.S. $ ***1,015,700.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **WELLS FARGO BANK, N.A.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. Interest

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    **4.250%.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. Payments

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **FIRST** day of each month beginning on **SEPTEMBER 01, 2014** . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **AUGUST 01, 2044**    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is is called the "Maturity Date."

I will make my monthly payments at **WELLS FARGO HOME MORTGAGE, P.O. BOX 11758, NEWARK, NJ 071014758**                                or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ *******4,996.63 .

## 4. Borrower's Right to Prepay

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

0382395788
MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services
NMFL# 3200 (CNOT) Rev. 9/2013

Form 3200 1/01
VMP5N (1302).00
Page 1 of 3

## 5. Loan Charges

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. Borrower's Failure to Pay as Required

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000%** of my overdue payment of principal and interest.

I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. Giving of Notices

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. Obligations of Persons Under this Note

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3200 1/01
VMP5N (1302).00
Page 2 of 3

## 9. Waivers

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. Uniform Secured Note

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JEFFREY H STARK        -Borrower

MICHAEL WILSON as attorney
in fact for Jeffrey H. Stark

_____ (Seal)
RACHEL DONALDSON        -Borrower

MICHAEL WILSON as attorney
in fact for Rachel Donaldson

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

*[Sign Original Only]*

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

Loan origination organization WELLS FARGO BANK, N.A.
NMLSR ID 399801
Loan originator JOSEPH CARRELLO
NMLSR ID 588194

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3200 1/01
VMP5N (1302).00
Page 3 of 3

144982

2014 00144982
Cert: 25253    Doc: MTG
Registered: 07/07/2014 11:58 AM

Return To:
FINAL DOCS N0012-01B

6200 PARK AVENUE
DES MOINES, IA  50321

Prepared By:
WELLS FARGO BANK, N.A.

1 E 22ND ST, 6TH FLOOR, SUITE
600, LOMBARD, IL  601484983

Property Address:
15 WIGWAM ROAD
NANTUCKET, MA 02554

# Mortgage

## Definitions

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A)   "Security Instrument" means this document, which is dated JULY 03, 2014         , together
with all Riders to this document.

(B)   "Borrower" is JEFFREY H STARK AND RACHEL DONALDSON, HUSBAND AND WIFE
         AND LAURA MARTORELLA

Borrower is the mortgagor under this Security Instrument.

(C)   "Lender" is WELLS FARGO BANK, N.A.

Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES
Lender's address is 101 NORTH PHILLIPS AVENUE, SIOUX FALLS, SD   57104

Lender is the mortgagee under this Security Instrument.

0382365768
MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

NMFL 3022 (MACM)  Rev. 9/2013

Form 3022 1/01
VMP6(MA) (1302).00
Page 1 of 18

D-004

(C-1) "Mortgage Broker" is NO MORTGAGE BROKER

Mortgage Broker's post office address is

and Mortgage Broker's license number is

(C-2) "Mortgage Loan Originator" is
Mortgage Loan Originator's post office address is

and Mortgage Loan Originator's license number is

(D) "Note" means the promissory note signed by Borrower and dated JULY 03, 2014 . The Note states that Borrower owes Lender ONE MILLION FIFTEEN THOUSAND SEVEN HUNDRED AND 00/100
Dollars (U.S. $ ***1,015,700.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than AUGUST 01, 2044 .

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☒ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6(MA) (1302).00
Page 2 of 18

D-005

**(L)** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M)** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N)** "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P)** "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

### Transfer of Rights in the Property

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the COUNTY *[Type of Recording Jurisdiction]* of NANTUCKET *[Name of Recording Jurisdiction]*:

SEE ATTACHED LEGAL DESCRIPTION

THIS IS A PURCHASE MONEY SECURITY INSTRUMENT.
TAX STATEMENTS SHOULD BE SENT TO: WELLS FARGO HOME MORTGAGE, P.O. BOX 11758, NEWARK, NJ 071014758

Parcel ID Number:
15 WIGWAM ROAD
NANTUCKET
("Property Address"):

which currently has the address of
*[Street]*
*[City]*, Massachusetts 02554 *[Zip Code]*

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6(MA) (1302).00
Page 3 of 18



D-006

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Uniform Covenants. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

   Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6(MA) (1302).00
Page 4 of 18

Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6(MA) (1302).00
Page 5 of 18

D-008

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6(MA) (1302).00
Page 6 of 18



5.    Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6(MA) (1302).00
Page 7 of 18

D-010

to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6(MA) (1302).00
Page 8 of 18



8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

    Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

    If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6(MA) (1302).00
Page 8 of 18



coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6(MA) (1302).00
Page 10 of 18

D-013

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6(MA) (1302).00
Page 11 of 18

or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6(MA) (1302).00
Page 12 of 18

D-015

exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **GoverningLaw; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a BeneficialInterest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6(MA) (1302).00
Page 13 of 18

D-016

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6(MA) (1302).00
Page 14 of 18



Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; **(b)** "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6(MA) (1302).00
Page 15 of 18

**Non-Uniform Covenants.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the **default**; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a **default** or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

    If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP8(MA) (1302).00
Page 16 of 18

144982

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

JEFFREY H. STARK by

_____ _____ vPOA (Seal)
JEFFREY H STARK                              -Borrower
MICHAEL WILSON as attorney in fact for
Jeffrey H. Stark
RACHEL DONALDSON by

_____ _____ vPOA (Seal)
RACHEL DONALDSON                             -Borrower
MICHAEL WILSON as attorney in fact for
RACHEL DONALDSON

_____ (Seal)          _____ (Seal)
                 -Borrower        LAURA MARTORELLA        -Borrower

_____ (Seal)          _____ (Seal)
                 -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                 -Borrower                                -Borrower

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6(MA) (1302).00
Page 17 of 18

D-020

Acknowledgment

State of MASSACHUSETTS

County of ~~Nantucket~~

On _July 3 2014_ , before me, the undersigned notary public, personally appeared
**JEFFREY H STARK AND RACHEL DONALDSON** and LAURA MARTORELLA
MICHAEL WILSON as attorney
infant for Jeffrey H Stark
and RACHEL DONALDSON

proved to me through satisfactory evidence of identification, which were MA DRIVER and GEORGIA DRIVER LIC.
to be the person(s) whose name(s) is/are signed on the preceding or attached document, and acknowledged
to me that he/she/they signed it voluntarily for its stated purpose.

_____
Notary Public

My commission expires:

```
                    ALLISON GORHAM
                    Notary Public
         COMMONWEALTH OF MASSACHUSETTS
              My Commission Expires
```

Loan origination organization WELLS FARGO BANK, N.A.
NMLSR ID 399801

Loan originator JOSEPH CARRELLO
NMLSR ID 588194

MASSACHUSETTS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3022 1/01
VMP6(MA) (1302).00
Page 18 of 18

## EXHIBIT A

The land together with the improvements thereon situate at 15 Wigwam Road, Nantucket Town and County, Massachusetts, bounded and described as follows:

Lot 820 upon plan numbered 5004-50, Sheet 2, drawn by Schofield Brothers, Inc. Surveyors, dated December 15, 1972 and filed with Certificate of Title No. 9613 at the Nantucket Registry District.

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made this 3RD day of JULY, 2014 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower" whether there are one or more persons undersigned) to secure Borrower's Note to WELLS FARGO BANK, N.A.

(the "Lender") of the same date and covering the Property described in the Security Instrument (the "Property"), which is located at:
15 WIGWAM ROAD, NANTUCKET, MA 02554

[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by the following:

6. Occupancy. Borrower shall occupy, and shall only use, the Property as Borrower's second home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at all times, and shall not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person any control over the occupancy or use of the Property.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's second home.

MULTISTATE SECOND HOME RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3890 1/01
VMP-365R (0811)

Page 1 of 2

Initials: _____

VMP Mortgage Solutions, Inc. (800)521-7291

NMFL 0209 (HORI) Rev 2/2009

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

JEFFREY H. STARK by                          RACHEL DONALDSON by

_____ (Seal)        _____ (Seal)
JEFFREY H STARK              -Borrower    RACHEL DONALDSON          -Borrower
MICHAEL WILSON as attorney in fact        MICHAEL WILSON as attorney in fact
For Jeffrey H. Stark                      for RACHEL DONALDSON

_____ (Seal)        _____ (Seal)
LAURA MARTORELLA        -Borrower                                 -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                                 -Borrower

_____ (Seal)        _____ (Seal)
                        -Borrower                                 -Borrower

MULTISTATE SECOND HOME RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3890 1/01
VMP-365R (0811)                    Page 2 of 2

# EXHIBIT E



# A. Settlement Statement (HUD-1)

OMB No. ████0265

| B. Type of Loan | | | |
|---|---|---|---|
| 1. ☐ FHA | 2. ☐ RHS | 3. ☑ CONV. UNINS. | 6. File Number: Martorella-Buy-2014 |
| 4. ☐ VA | 5. ☐ CONV. INS. | | 7. Loan Number: ███5788 | 8. Mortgage Ins. Case No.: |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrowers: | F. Name and Address of Lender: |
|---|---|
| Laura Martorella | Wells Fargo Bank N.A. |
| 2042 Walnut Ave., Venice, CA 90291 | 1 E 22ND ST. 6TH FLOOR |
| Jeffrey H. Stark | LOMBARD, IL 60148-4983 |
| Rachel Donaldson | |

| E. Name and Address of Sellers: | H. Settlement Agent: |
|---|---|
| David F. Morris as exchanger, seller | Attorney Michael J. Wilson, P.C. |
| 20 Circle Road, Darien, CT 06820 | |
| Erika C.S. Morris exchanger, seller | 1 Hooper Farm Road |
| 1031 Exchange Inc. | Nantucket, MA 02554 |
| | Phone Nbr: 5082281929 |

| G. Property Location: | I. Settlement Date: 07/03/2014 | Place of Settlement: |
|---|---|---|
| 15 Wigwam | | Attorney Michael J. Wilson, P.C. |
| Nantucket, MA 02554 | Disbursement Date: 07/03/2014 | 1 Hooper Farm Rd. Nantucket, MA 02554 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower** | | **400. Gross Amount Due To Seller** | |
| 101. Contract sales price | 1,451,000.00 | 401. Contract sales price | 1,451,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 43,905.49 | 403. | |
| 104. Extra Interest on Payoff | 1,424.34 | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes to | | 406. City/town taxes to | |
| 107. County taxes to | | 407. County taxes to | |
| 108. Assessments to | | 408. Assessments to | |
| 109. RE Taxes | 264.10 | 409. RE Taxes | 264.10 |
| 110. Pers Prop Tax | 6.08 | 410. Pers Prop Tax | 6.08 |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due From Borrower** | $1,496,600.01 | **420. Gross Amount Due To Seller** | $1,451,270.18 |
| **200. Amounts Paid By Or In Behalf Of Borrower** | | **500. Reductions In Amount Due To Seller** | |
| 201. Deposit or earnest money | 145,100.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 1,015,700.00 | 502. Settlement charges to seller (line 1400) | 8,719.53 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Deposit held by MJW | 350,000.00 | 504. Payoff 1st Mtg Ln   WELLS FARGO | 920,709.97 |
| 205. | | 505. Payoff 2nd Mtg Ln | |
| 206. | | 506. Deposit held by Broker | 145,100.00 |
| 207. | | 507. | |
| 208. | | 508. Glidden Legal | 2,400.00 |
| 209. | | 509. Smoke Cert | 50.00 |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes to | | 510. City/town taxes to | |
| 211. County taxes to | | 511. County taxes to | |
| 212. Assessments to | | 512. Assessments to | |
| 213. | | 513. | |
| 214. Homeowners Association Dues | 558.19 | 514. Homeowners Association Dues | 558.19 |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | $1,511,358.19 | **520. Total Reductions Amount Due Seller** | $1,077,537.69 |
| **300. Cash At Settlement From/To Borrower** | | **600. Cash At Settlement To/From Seller** | |
| 301. Gross amount due from borrower (line 120) | $1,496,600.01 | 601. Gross amount due to seller (line 420) | $1,451,270.18 |
| 302. Less amount paid by/for borrower (line 220) | ($1,511,358.19) | 602. Less reductions in amount due seller (line 520) | ($1,077,537.69) |
| **303. CASH** ☐ FROM ☑ TO **BORROWER:** | $14,758.18 | **603. CASH** ☑ TO ☐ FROM **SELLER:** | $373,732.49 |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the selling process.

| L. Settlement Charges | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| 700. Total Real Estate Broker Fees | | | | |
| Division of Commission (line 700) as follows: | | | | |
| 701. $ to | | | | |
| 702. $ to | | | | |
| 703. Commission paid at Settlement | | | | |
| 704. | | | | |
| 705. | | | | |
| 800. Items Payable in Connection with Loan | | | | |
| 801. Our origination charge | 850.00 | (from GFE #1) | | |
| 802. Your credit or charge (points) for the specific interest rate chosen | | (from GFE #2) | | |
| 803. Your adjusted origination charges | | (from GFE A) | 850.00 | |
| 804. Appraisal fee to RELS VALUATION | | (from GFE #3) | 960.00 | |
| 805. Credit report to CORELOGIC CREDCO, LLC | | (from GFE #3) | 18.00 | |
| 806. Tax service to | | (from GFE #3) | | |
| 807. Flood certification to | | (from GFE #3) | | |
| 808. | | | | |
| 809. | | | | |
| 810. | | | | |
| 811. | | | | |
| 812. | | | | |
| 813. | | | | |
| 900. Items Required by Lender to Be Paid in Advance | | | | |
| 901. Daily interest charges from 07/03/2014 to 08/01/2014 @ $ 118.2700 /day for 29 days | | (from GFE #10) | 3,429.83 | |
| 902. Mortgage insurance premium for mo. to | | (from GFE #3) | | |
| 903. Homeowner's insurance for 1 yrs. to MPIUA POC:Borrower 3,595.00 | | (from GFE #11) | | |
| 904. yrs. to | | | | |
| 1000. Reserves Deposited with Lender | | | | |
| 1001. Initial deposit for your escrow account | | (from GFE #9) | 2,505.41 | |
| 1002. Homeowner's Insurance | 5 months @ 299.58 per month | 1,497.90 | | |
| 1003. Mortgage insurance | months @ per month | | | |
| 1004. City property taxes | months @ per month | | | |
| 1005. CITY TAXES | 3 months @ 535.54 per month | 1,606.62 | | |
| 1006. | months @ per month | | | |
| 1007. | months @ per month | | | |
| 1008. Aggregate Adjustment | | (599.11) | | |
| 1100. Title Charges | | | | |
| 1101. Title services and lender's title insurance | | (from GFE #4) | 3,952.00 | |
| 1102. Settlement or closing fee to Michael J. Wilson | | | 1,100.00 | |
| 1103. Owner's title insurance FATICO | | (from GFE #5) | 2,621.25 | |
| 1104. Lender's title insurance FATICO | | | 2,794.00 | |
| 1105. Lender's title policy limit $ 1,015,700.00 | | | | |
| 1106. Owner's title policy limit $ 1,451,000.00 | | | | |
| 1107. Agent's portion of the total title insurance premium $ 3,790.68 to Attorney Michael J. Wilson, P.C. | | | | |
| 1108. Underwriter's portion of the title insurance premium $ 1,624.57 to First American Title Insurance Company | | | | |
| 1109. MLC to Nantucket Town | | | 25.00 | |
| 1110. Courier Fee to UPS | | | 33.00 | |
| 1111. to | | | | |
| 1112. to | | | | |
| 1113. to | | | | |
| 1200. Government Recording and Transfer Charges | | | | |
| 1201. Government recording charges | | (from GFE #7) | 440.00 | |
| 1202. Recording fees: Deed 125.00 ; Mortgage 175.00 ; Releases 0.00 | | | | 0.00 |
| 1203. Transfer taxes | | (from GFE #8) | 0.00 | |
| 1204. City/county tax stamps: Deed 6,616.56 ; Mortgage | | | | 6,616.56 |
| 1205. State tax/stamps: Deed ; Mortgage | | | | |
| 1206 Record MLC/Record POA to Registry of Deeds | | | 140.00 | |
| 1207 Land bank Fee to Nantucket Land Bank | | | 29,020.00 | |
| 1208 Record 6D to Nantucket registry | | | | 75.00 |
| 1300. Additional Settlement Charges | | | | |
| 1301. Required services that you can shop for | | (from GFE #6) | 0.00 | |
| 1302. Title 5 Report to | | | | 775.00 |
| 1303. Overnight Delivery to Reimburse Glidden and Glidden | | | | 100.00 |
| 1304. 1031 Exchange fee to 1031 Exchange INC | | | 1,000.00 | |
| 1305. FLOOD LIFE OF LOAN FEE to WF FLOOD SVS | | | 19.00 | |
| 1306. TAX SERIVCE FEE to WF RE EST TAX SVS | | | 90.00 | |
| 1307. Personal Property Tax to TON | | | | 152.97 |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | $43,905.49 | $8,719.53 |

| Comparison of Good Faith Estimate (GFE) and HUD-1 Charges | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| **Charges That Cannot Increase** | HUD-1 Line Number | | |
| Our origination charge | # 801 | 850.00 | 850.00 |
| Your credit or charge (points) for the specific interest rate chosen | # 802 | | |
| Your adjusted origination charges | # 803 | 850.00 | 850.00 |
| Transfer taxes | # 1203 | | 0.00 |

| **Charges That in Total Cannot Increase More than 10%** | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Government recording charges | # 1201 | 300.00 | 440.00 |
| Appraisal Fee | # 804 | 960.00 | 960.00 |
| Credit report | # 805 | 23.96 | 18.00 |
| Tax service | # 806 | | 0.00 |
| Flood certification | # 807 | | 0.00 |
| TAX SERIVCE FEE | # 1302 | 90.00 | 90.00 |
| FLOOD LIFE OF LOAN FEE | # 1303 | 19.00 | 19.00 |
| SURVEY | # 1304 | 175.00 | 175.00 |
| SEPTIC INSPECTION | # 1304 | 225.00 | |
| | # | | |
| | # | | |

| | | | |
|---|---|---|---|
| Total | | 1,792.96 | 1,702.00 |
| Increase between GFE and HUD-1 Charges | | $ (90.96) or | (5.07) % |

| **Charges That Can Change** | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Initial deposit for your escrow account | # 1001 | 4,136.05 | 2,505.41 |
| Daily interest charges | # 901  118.27  /day | 3,311.56 | 3,429.83 |
| Homeowner's insurance | # 903 | 3,500.00 | 3,595.00 |
| TITLE SERVICES | # 1101 | 4,391.25 | 4,391.25 |
| OWNERS TITLE | # 1103 | 3,762.50 | 3,762.50 |
| | # | | |

**Loan Terms**

| | |
|---|---|
| Your initial loan amount is | $ 1,015,700.00 |
| Your loan term is | 30 years |
| Your initial interest rate is | 4.25 % |
| Your initial monthly amount owed for principal, interest, and any mortgage insurance is | $ 4,996.63 includes<br>☑ Principal<br>☑ Interest<br>☐ Mortgage Insurance |
| Can your interest rate rise? | ☑ No, ☐ Yes, it can rise to a maximum of %.<br>The first change will be on and can change again<br>every after . Every change date<br>your interest rate can increase or decrease by %.<br>Over the life of the loan, your interest rate is guaranteed to never be<br>lower than % or higher than % |
| Even if you make payments on time, can your loan balance rise? | ☑ No, ☐ Yes, it can rise to a maximum of $ . |
| Even if you make payments on time, can your monthly amount owed for principal, interest, and mortgage insurance rise? | ☑ No, ☐ Yes, the first increase can be on<br>and the monthly amount owed can rise to $ .<br>The maximum it can ever rise to is $ . |
| Does your loan have a prepayment penalty ? | ☑ No, ☐ Yes, your maximum prepayment penalty is $ |
| Does your loan have a balloon payment? | ☑ No, ☐ Yes, you have a balloon payment of $ .<br>due in years on |
| Total monthly amount owed including escrow account payments | ☐ You do not have a monthly escrow payment for items, such as property taxes and homeowner's insurance. You must pay these items directly yourself<br>☑ You have an additional monthly escrow payment of $ 835.12 that results in a total initial mthly amt owed of $ 5,831.75 . This includes principal, interest, any mortage insurance and any items checked below<br>☑ Property taxes ☐<br>☐ Flood Insurance ☐<br>☐ Homeowner's Insurance ☐ |

Note: If you have any questions about the Settlement Charges and Loan Terms listed on this form, please contact your lender.

1903

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement (pages 1, 2 and 3).

Borrowers                                                    Sellers

_____    _____    _____    _____
Laura Martorella                    Jeffrey H. Stark                    David F. Morris                    Erika C.S. Morris
                                    Michael Wilson as
                                    attorney in fact for
                                    Jeffrey H. Stark

_____
Rachel Donaldson
Michael Wilson as
attorney in fact for
Rachel Donaldson
Settlement Agent                                                                                    Date        07/03/2014
_____                                                                            _____

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

Previous editions are obsolete

EXHIBIT F

## AMENDED AND RESTATED PROMISSORY NOTE

$ ~~674,023~~ —

July 1, 2016

**FOR VALUE RECEIVED**, the undersigned, Laura Martorella ("L. Martorella") and Christopher Martorella ("C. Martorella" and collectively with L. Martorella, the "Makers"), whose address is 35 Nuschoee Avenue, Atlanta, Georgia, 30305, hereby promises to pay to the order of JH Stark Companies, a California Corporation ("Payee"), whose address is 2042 Walnut Ave Venice, California, 90291, or at such other place as Payee may from time to time designate in writing, the principal sum of 674,023 Dollars and —/100 ($674,023 .00) (the "Loan Amount"), pursuant to this Promissory Note (this "Note"), together with interest thereon at the applicable per annum rate as hereinafter set forth, and all other amounts now or hereafter owing by Makers to Payee under this Note. The indebtedness evidenced by this Note is referred to as the "Debt".

1.  Funding; Use of Proceeds. The Loan Amount has been fully funded on the date hereof and has been used in connection with the acquisition of 15 Wigwam Road, Nantucket, Massachusetts (the "Property") and in satisfaction of certain other obligations of one or more of the Makers.

2.  Principal and Interest. From and after the date hereof, through and including July 1, 2017 (the "Maturity Date"), interest shall accrue on the unpaid principal amount outstanding from time to time under this Note at the rate equal to fifteen percent (15%) per annum, compounding quarterly.

3.  Payment of Interest and Principal. Makers shall repay the principal amount outstanding under this Note together with all accrued interest thereon on the Maturity Date, or on any earlier date on which the unpaid principal balance of this Note becomes due and payable, by acceleration or otherwise. All payments by Makers hereunder shall be applied (i) first to any amount due to Payee pursuant to Paragraph 8 of this Note, (ii) then to the interest due and unpaid under this Note and (iii) thereafter to any principal owing under this Note.

4.  Prepayment. Makers shall have the right to prepay in part or in full, without penalty, any amounts due and payable under this Note (together with accrued interest to the date of prepayment on the amount of principal thus prepaid) at any time or times.

5.  Default Interest Rate. Upon a default and until such time as such default is cured, Payee may raise the rate of interest accruing on the unpaid principal balance hereof to twenty percent (20%) per annum, compounding quarterly (the "Default Rate"), independent of whether Payee elects to accelerate the unpaid principal balance as a result of such default.

6.  Waiver Regarding Notice. Except as set forth herein, Makers waive presentment, demand and presentation for payment, notice of nonpayment and dishonor, protest and notice of protest, or any other notices of whatever kind or nature, bringing of suit and diligence in taking any action to collect any sum owing hereunder. From time to time, without in any way affecting the obligation of Makers to pay the outstanding principal balance of this Note and any interest accrued thereon and fully to observe and perform the covenants and obligations of Makers under

50140289.1

F-001

this Note, without giving notice to or obtaining the consent of Makers and without liability on the part of Payee, the Payee may, at its option, (i) extend the time for payment of interest hereon and/or principal hereof, (ii) reduce the payments hereunder, (iii) release anyone liable on this Note, (iv) accept a renewal of this Note, (v) join in any extension or subordination, and/or (vi) exercise any right or election hereunder. No one or more of such actions shall constitute a novation or operate to release any party liable for this Note, either as Maker or otherwise.

7.   Events of Default. The occurrence of any of the following, whatever the reason therefor, shall constitute an "Event of Default" hereunder:

(a)   Makers fails to make any payment of principal or interest hereunder within ten (10) days of when due;

(b)   Any Maker is in default under any provision of that certain Indemnification and Reimbursement Agreement dated as of June 19, 2014, as amended by that certain First Amendment to Indemnification and Reimbursement Agreement and Note Modification Agreement dated as of July 1, 2016; and/or

(c)   Any Maker is the subject of a final order for relief by a bankruptcy court, or is unable or admits its inability to pay its debts as they mature, or makes an assignment for the benefit of creditors; or any Maker applies for or consents to the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator or similar officer for it or any part of its property; or any receiver, trustee, custodian, conservator, liquidator, rehabilitator or similar officer is appointed without the application or consent of any Maker, and the appointment continues undischarged or unstayed for 60 days; or any Maker institutes or consents to any bankruptcy, insolvency, reorganization, arrangement, readjustment or debt, dissolution, receivership, custodianship, conservatorship, liquidation, rehabilitation or similar proceeding relating to it or any part of its property; or any similar proceeding is instituted without the consent of said Maker and continues undismissed or unstayed for 60 days; or any judgment, writ, warrant or attachment or execution, or similar process is issued or levied against any property of any Maker and is not released, vacated or fully bonded within 60 days after its issue or levy.

8.   Remedies. Upon the occurrence of an Event of Default, Payee shall have the right to cause the entire unpaid principal balance hereof, together with all accrued interest thereon, reasonable attorneys' fees and all fees, charges, costs and expenses, if any, owed by Makers to Payee hereunder, to become immediately due and payable in full by giving written notice to Makers. Upon the occurrence of an Event of Default, Payee may avail itself of any and all legal and equitable rights and remedies which Payee may have at law or in equity or under this Note, including, but not limited to, the right to accelerate the indebtedness due under this Note as described in the preceding sentence. The remedies of Payee hereof as provided herein shall be distinct and cumulative, and may be pursued singly, successively or together, at the sole discretion of Payee, and may be exercised as often as occasion therefor shall arise. Failure to exercise any of the foregoing options upon the occurrence of an Event of Default shall not constitute a waiver of the right to exercise the same or any other option at any subsequent time in respect of the same or any other Event of Default, and no single or partial exercise of any right or remedy shall preclude other or further exercise of the same or any other right or remedy. Payee shall have no duty to exercise any or all of the rights and remedies herein provided or

2

contemplated. The acceptance by Payee of any payment hereunder that is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of the right to exercise any of the foregoing rights or remedies at that time, or nullify any prior exercise of any such rights or remedies without the express written consent of Payee.

9.      Expenses of Collection.  Should this Note be referred to an attorney for collection after an Event of Default, whether or not suit has been filed or any other action instituted or taken to enforce or collect under this Note, Makers shall pay all of Payee's costs, fees (including reasonable attorneys' fees) and expenses in connection with such referral and enforcement.

10.     Governing Law.  The provisions of this Note shall be governed and construed according to the internal laws of the State of California (without regard to its laws relating to choice or conflicts-of-law).  The forum for any legal action or proceeding under this Note shall be the Superior Court of the County of Los Angeles or the Central District of the California United States District Court, or such other jurisdiction or forum as any be designated by Payee. Each Maker irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise.

11.     Waiver.  Neither any course of dealing by Payee nor any failure or delay on its part to exercise any right, power or privilege hereunder shall operate as a waiver hereof unless said waiver is in writing and signed by Payee, and then only to the extent specifically set forth in said writing.  A waiver as to one event shall not be construed as a continuing waiver or as a bar to, or waiver of, any right or remedy as to any subsequent event.

12.     Modification.  This Note may not be changed orally, but only by an agreement in writing, signed by the party against whom any change, modification or discharge is sought.

13.     Notices.  All notices required or permitted hereunder shall be in writing and shall be served on the parties at the addresses set forth on the first page of this Note.  Any such notices shall be either (a) sent by certified mail, return receipt requested, in which case notice shall be deemed delivered three business days after deposit, postage prepaid in the U.S. Mail, (b) sent by overnight delivery using a nationally recognized overnight courier, in which case it shall be deemed delivered one business day after deposit with such courier, (c) sent by telefax, in which case notice shall be deemed delivered upon transmission of such notice, or (d) sent by personal delivery.  The above addresses may be changed by written notice to the other party; provided, however, that no notice of a change of address shall be effective until actual receipt of such notice.  Copies of notices are for informational purposes only, and a failure to give or receive copies of any notice shall not be deemed a failure to give notice.

14.     Assignment.  Payee may assign or otherwise transfer this Note and any other document pertaining to the Debt at any time or from time to time.

15.     Severability.  In the event any one or more of the provisions contained in this Note shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall, at the option of Payee hereof, not affect any other

3

provision of this Note and this Note shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

16.     Limitations of Applicable Law. In the event the operation of any provision hereof results in an effective rate of interest transcending the limit of the usury or any other law applicable to the Debt evidenced hereby, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice between or by any party to this Note, be applied to the unpaid principal balance of this Note immediately upon receipt of such monies by Payee, with the same force and effect as though Makers had specifically designated such extra sums to be so applied to the unpaid principal balance and Payee hereof had agreed to accept such extra payment(s) as a prepayment.

17.     Joint and Several Liability. The liability of each Maker hereunder shall be joint and several.

18.     Time of Essence. It is expressly agreed that time is of the essence in the performance of the obligations set forth in this Note.

19.     Gender and Number. Feminine or neuter pronouns shall be substituted for those of the masculine form, and the plural shall be substituted for the singular number, in any place or places in which the context may require such substitution.

20.     Amendment and Restatement. This Note amends and restates that certain Promissory Note dated as of July 18, 2014.

*Remainder of page intentionally left blank*

4

50140289.1

**IN WITNESS WHEREOF**, Makers have executed this Note as of the date set forth above pursuant to due authority.

MAKERS:

_____
Laura Martorella

_____
Christopher Martorella

5

# EXHIBIT G

# FIRST AMENDMENT TO
## INDEMNIFICATION AND REIMBURSEMENT AGREEMENT AND NOTE MODIFICATION AGREEMENT

This First Amendment to Indemnification and Reimbursement Agreement and Note Modification Agreement (the "Amendment", is made and entered into as of July 1, 2016, by and between Jeffrey H. Stark ("Stark"), Rachel Donaldson ("Donaldson" and collectively with Stark, the "Guarantors") and JH Stark Companies, a California corporation ("Stark Companies" and collectively with the Guarantors, the "Stark Parties"), each with an address at 2042 Walnut Avenue, Venice, California, 90291, and Laura Martorella ("L. Martorella") and Christopher Martorella ("C. Martorella" and collectively with L. Martorella, the "Indemnitors"), each with an address at 35 Nuschoee Avenue, Atlanta, Georgia, 30305, with reference to the following recitals of fact. The Stark Parties and the Indemnitors are herein referred to as the "Parties".

## RECITALS:

WHEREAS, on or about July 3, 2014, L. Martorella acquired that certain single family home located at 15 Wigwam Road, Nantucket, Massachusetts as more specifically described in Exhibit A attached hereto (the "Property");

WHEREAS, in order to facilitate L. Martorella's acquisition and financing of the Property, the Guarantors acted as co-obligors on that certain loan in the approximate amount of $1,012,000 (the "Wells Loan") from Wells Fargo, N.A. (the "Lender") to L. Martorella, the proceeds of which were used to acquire Property;

WHEREAS, concurrently with the acquisition of the Property, C. Martorella entered into that certain Indemnification and Reimbursement Agreement dated as of June 19, 2014 (the "Original Reimbursement Agreement") pursuant to which C. Martorella agreed to, among other matters, (i) pay any and all amounts due under the Wells Loan, and perform all obligations set forth in the Wells Loan, in a timely manner and in all events prior to delinquency, and (ii) cause the Wells Loan to be refinanced on or before July 1, 2015;

WHEREAS, concurrently with the acquisition of the Property, Stark Companies made a loan to C. Martorella in the original principal amount of $480,341.82 (the "Stark Loan") for use by L. Martorella to acquire the Property as evidenced by that certain Promissory Note dated as of June 18, 2014 (the "Original Stark Note"); and

WHEREAS, C. Martorella is in default of his obligations under the Original Reimbursement Agreement and the Original Stark Note, which defaults include, but are not limited to, (i) failure of the Wells Loan to be refinanced, (ii) failure of the Stark Loan to be repaid upon its stated maturity date and (iii) failure of C. Martorella to reimburse the Guarantors for certain payments made by one or more of the Stark Parties under the Wells Loan; and

WHEREAS, C. Martorella and L. Martorella are husband and wife and L. Martorella has materially and substantially benefited from the making of the Stark Loan and the actions of the Guarantors.

80140288.1

NOW, THEREFORE, in consideration of the foregoing recitals, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties hereto agree as follows:

A G R E E M E N T:

1.     Defined Terms.  Capitalized terms not otherwise defined herein shall have the respective meanings set forth in the Original Reimbursement Agreement.  The Original Reimbursement Agreement, as amended by this Amendment is hereinafter referred to as the "Reimbursement Agreement."

2.     Agreement to be Bound.  L. Martorella hereby agrees to be bound by all of the terms, conditions and obligations of the Reimbursement Agreement as an "Indemnitor" thereunder.  C. Martorella and L. Martorella agree and acknowledge that they are jointly and severally liable for all obligations of the "Indemnitors" under the Reimbursement Agreement.

3.     Reaffirmation of Obligations.  Indemnitors reaffirms all of their obligations under Reimbursement Agreement and the Original Stark Note and agree and acknowledge that they have no claims, offsets or defenses with respect to the payment of sums now or hereafter payable under the Reimbursement Agreement or the Original Stark Note.  Except as amended hereby, the Reimbursement Agreement remains unmodified and in full force and effect, and the parties hereto hereby ratify and reaffirm the terms of the Reimbursement Agreement.

4.     Amendment and Restatement of Note.  Concurrently herewith, the Indemnitors shall executed that certain Amended and Restated Promissory Note attached hereto as Exhibit B (the "New Stark Note") which shall amend and restated the Original Stark Note.

a.     The initial principal balance of the New Stark Note shall be $ 677,023 (the "New Principal Balance") which has been calculated as follows:

i.      $480,341.82, which represents the initial amount disbursed under the Stark Loan on or about July 3, 2014, plus

ii.     $_____, which represents accrued and unpaid principal on the Stark Loan as the date hereof, plus

iii.    $_____, ($27,457.97 + Interest at 10% per section 5 of reimbursement agreement), which represents amounts advanced by one or more of the Stark Parties to make payments of principal and/or interest of the Wells Loan and interest thereon pursuant to Section 5 of the Original Reimbursement Agreement, plus

iv.     $_____, which represents the amount owed by the Indemnitors to the Guarantors pursuant to Section 2 of the Original Reimbursement Agreement.

b.     The New Principal Balance shall bear interest at the lesser of (i) 15% per annum, compounding quarterly or (ii) the highest rate allowed by law.

2

c.      The Maturity Date of the New Note shall be July 1, 2017.

       d.      Notwithstanding anything to the contrary set forth herein, Indemnitors agree and acknowledge that the New Principal Balance has been properly calculated and represents amounts currently owed to the Stark Parties.

      5.      <u>Refinancing of Wells Loan</u>. The Indemnitors shall use their best efforts to cause the Wells Loan to be refinanced, which refinancing shall release the Guarantors from all liability thereunder. Indemnitors shall pay $1000 per month (on the first business day of each month) for every month the Wells Loan remains outstanding.

      6.      <u>Governing Law</u>. The Reimbursement Agreement shall be interpreted in accordance with and governed in all respects by the laws of the State of California. If any party to the Reimbursement Agreement shall bring any action or proceeding in connection with this Agreement, the prevailing party in such action shall be entitled to recover as a part of such action or proceeding its attorneys' fees, accountants' and experts' fees and court costs. The forum for any legal action or proceeding under the Reimbursement Agreement shall be the Superior Court of the County of Los Angeles or the Central District of the California United States District Court, or such other jurisdiction or forum as may be designated by Guarantors. Each Indemnitor irrevocably consents to service, jurisdiction and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise.

      7.      <u>Joint and Several Obligations</u>. The obligations of the Indemnitors hereunder shall be joint and several.

      8.      <u>Counterparts</u>. This Amendment may be executed in counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same document.

3

IN WITNESS WHEREOF, this Amendment is hereby executed as of the day and year first above written.

INDEMNITORS:

_____
Laura Martorella

_____
Christopher Martorella

STARK PARTIES:

_____
Jeffrey H. Stark

_____
Rachel Donaldson

JH Stark Companies,
a California corporation

By: _____
Jeffrey H. Stark, President

4

50140288.1

EXHIBIT H

### NOTICE OF INTENTION TO COLLECT ATTORNEY'S FEES AS PROVIDED IN THE 2014 NOTE, AMENDED NOTE, AND THE INDEMNIFICATION AGREEMENT AND AMENDED INDEMNIFICATION AGREEMENT

YOU ARE HEREBY NOTIFIED that it is the intention of the Plaintiffs to enforce the provisions of the documents described in the foregoing pleadings relative to the payment of attorney's fees in addition to the principal and interest in the event it is necessary to make collection through the services of an attorney. Georgia law (O.C.G.A. §13-1-11) provides that you have ten days from the receipt of this notice to make full payment of all principal and interest without the addition of the attorney's fees. Unless you pay the principal and interest in full before the expiration of ten days from receipt of this notice, then attorney's fees will be added to the outstanding principal and interest for which collection is sought as provided by law and by the terms of the foregoing documents.